UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ISAM HINDIA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 18 C 06780 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SHERIFF OF COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Isam Hindia worked as a Deputy Sheriff for the Cook County Sheriff's Office for almost three years. But after Hindia suffered an anxiety attack in 2016, the Sheriff's Office deemed him unfit for duty and put him on non-pay status. Eventually, during a Union grievance process, Hindia signed a settlement agreement agreeing to take a position as a civilian administrative assistant in the Cook County Records Department. He later sued the Sheriff's Office (referred to as the "Sheriff" for convenience's sake) under the Americans with Disabilities Act, 42 U.S.C. § 12117, and the Rehabilitation Act, 29 U.S.C. §§ 791, 794, alleging that the Sheriff failed to reasonably accommodate his disability and discriminated against him based on his disability. R. 1, Compl.[1] Now, the Sheriff moves to dismiss the claims, arguing that Hindia released his claims under the settlement agreement. R. 14, Mot. Dismiss.

---

[1]This Court has federal-question jurisdiction under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

1

## I. Background

As a explained in further detail below, the Court construes the Sheriff's motion as one for early summary judgment. The Court therefore views the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993).

In March 2016, Hindia suffered an anxiety attack from acute stress while on duty as a Deputy Sheriff. R. 17-1, Hindia Decl. ¶ 1. He was later taken to the hospital. *Id*. ¶ 2. After being released, the Sheriff directed Hindia to meet with a doctor for a medical and mental-health evaluation. *Id*. Based on this evaluation, Hindia was deemed unfit for duty and placed on non-pay status. R. 28, Exh. C, Kramer Decl. ¶ 3. Hindia then worked with his union (the Teamsters) and the Sheriff's Human Resources Department (HR) to effectuate a transfer to a civilian position within the Sheriff's Office. *Id*. ¶ 3-4. A Union attorney, Nicole Chaney, negotiated and drafted the settlement agreement covering Hindia's transfer. *Id*. ¶ 7. Chaney worked with Peter Kramer, Special Counsel of Labor affairs for the Sheriff, to put the agreement together. *Id*. ¶ 9. As part of the transfer process, Hindia completed a Skills Assessment test with HR in November 2016. *Id*. ¶ 4.

In the meantime, Hindia remained on non-pay status. By January 2017 his financial situation became dire: his bank account balance was almost at zero, he struggled to keep up with his bills and living expenses, and he was maxed out on his

credit cards. Hindia Decl. ¶ 3. Eventually, Hindia's wife divorced him because he could no longer provide for her. *Id.* ¶ 4.

Then, in February 2017, Hindia was called to a meeting with HR. Hindia Decl. ¶ 5. At the meeting were Nicole Chaney, the Union attorney; Mark Robinson, a representative from the Sheriff's Office; and an attorney for the Sheriff's Office (Hindia does not remember the attorney's name). *Id.* When Hindia arrived at the meeting, he was provided with a copy of the settlement agreement that Chaney had drafted and negotiated with Kramer; this was the first time that Hindia had seen a written draft of the agreement. *Id.* ¶¶ 6, 10. During the meeting, Hindia was not given the chance to make any changes to the agreement, nor were the terms negotiated in his presence. *Id.* ¶ 7. He was also not made aware of any negotiations that occurred outside of his presence. *Id.*

The settlement agreement provides that, if Hindia agreed to resign from his current position, then he would be transferred from his inactive position as a sworn officer to a full-time civilian administrative assistant in the Sheriff's Records Department. R. 14-1, Settlement Agreement at 1. The agreement says that the parties to the settlement are Hindia, the Union, and the Sheriff's Office, including its Department of Corrections and its Department of Records. *Id.*[2] The settlement agreement also describes what claims are being released:

> This transfer shall be in full settlement of any existing claims/disputes that Hindia and/or Teamsters possess with respect to Isam Hindia's fitness-for-duty and/or Isam Hindia's probationary status as a sworn correctional officer at the CCDOC and any such pending claims are hereby extinguished. By signing this

---

[2]Only Chaney and Hindia actually signed the agreement. Settlement Agreement at 2.

3

> Agreement, Hindia hereby accepts the aforementioned position as a civilian and acknowledges and agrees that this settlement resolves any and all such disputes and claims which have been or could have been asserted by him, or on his behalf, prior to the execution date of this settlement, including any and all disputes and claims pertaining to Hindia's Fitness-For-Duty Assessment and IME as a sworn correctional officer in and around 2016 and Hindia further hereby waives any claim he may/may not have had to backpay as a result of his absence from work due to said Fitness-For-Duty.

*Id.*

Hindia was told by one of the meeting's attendees that, under this agreement, he would *not* be waiving any right to file a legal action in court at a later date. Hindia Decl. ¶ 8. Hindia thus understood the release language to mean that he was waiving his rights only to file a union grievance, and that any pending union grievance would be dismissed. *Id.* No one at the meeting told Hindia that he was waiving his right to file a *court* case under the ADA, nor any other type of discrimination lawsuit. *Id.* ¶ 9. Hindia was also told that his employment would be terminated if he did not agree to the settlement. *Id.* ¶¶ 6-7. So Hindia signed the agreement that very day, which he attributes at least in part to stress from his financial situation, and because he believed he did not have a choice but to sign the agreement right then and there. *Id.*

Hindia eventually filed this lawsuit against the Sheriff, bringing claims under the ADA and the Rehabilitation Act. The Sheriff argues that Hindia released his claims pursuant to the settlement agreement. Mot. Dismiss. at 2. In response, Hindia argues that the agreement does not release his rights to file a federal employment case, and even if the agreement purports to do that, Hindia signed the agreement unknowingly and involuntarily. R. 17, Pl.'s Resp. Br.

## II. Legal Standard

In moving to dismiss, the Sheriff invokes Federal Rule of Civil Procedure 12(b)(1), which requires dismissal of cases for lack of subject matter jurisdiction. But the Sheriff's argument is *not* really that Hindia's case does not fit within this Court's subject matter jurisdiction. Instead, the Sheriff is actually arguing that Hindia has settled and released the claims, *see* Mot. Dismiss at 2 ("This Court should therefore enter judgment in favor of Defendant as to Plaintiff's Complaint because it is barred by a prior settlement agreement and release."), which is not a subject matter jurisdiction problem. A motion for judgment on the pleadings under Rule 12(c), not Rule 12(b)(1), provides the proper vehicle for challenging a complaint based on an affirmative defense, like release of a claim. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015). That said, when a Rule 12(c) motion relies on material outside the pleadings—like the settlement agreement at issue here—Rule 12(d) generally requires that a court treat the motion as one for summary judgment under Rule 56 and give the parties "a reasonable opportunity to present" all pertinent material. *See id.* (quoting Fed. R. Civ. P. 12(d)).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable

5

inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

On the premise that the Sheriff has filed a summary judgment motion on the purported release, the overarching question is whether there is a genuine dispute of material fact on the release's application to the claims in Hindia's complaint. Settlement agreements are like any other contracts, and thus are governed by ordinary contract principles under state law. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) ("State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements."). Here, both parties rely on Illinois law to make their arguments, so the Court does too. A settlement agreement is enforceable under Illinois law if there is an offer, an acceptance, and a meeting of the minds on the material terms of the agreement. *Dillard v. Starcon Int'l, Inc.*, 483

6

F.3d 502, 507 (7th Cir.2007); *Petrich v. MCY Music World, Inc.*, 862 N.E.2d 1171, 1183 (Ill. App. Ct. 2007).

In addition to these state law requirements, federal law requires that a settlement purporting to release a federal employment-discrimination claim be entered into knowingly and voluntarily. *Beverly*, 817 F.3d at 333; *see also Dillard*, 483 F.3d at 507. This add-on requirement is a "prerequisite to be satisfied *after* the existence of a binding agreement under state contract principles has been established." *Dillard*, 483 F.3d at 507, n.4 (emphasis added). So the Court first examines whether the settlement agreement is enforceable under Illinois law and then considers whether Hindia entered into the agreement knowingly and voluntarily.

### A. Contract Formation under State Law

Under Illinois law, "a settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms." *Beverly*, 817 F.3d at 333; *see also Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir.1999) (citing *SBL Assoc. v. Vill. of Elk Grove*, 617 N.E.2d 178, 182 (1993)). Whether the parties gave their mutual assent to enter into a contract depends on each party's *objective* expressions of assent, rather than subjective internal thoughts. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (quoting *Beverly*, 817 F.3d at 333) ("Formation of a contract requires mutual assent in virtually all jurisdictions; Illinois courts use an objective approach to that question."). So "intent

7

to manifest assent in Illinois is revealed by outward expressions such as words and acts." *Id*.

A contract's text is the most obvious outward expression of the parties' intent, so the text's plain meaning—if it has one—controls. In interpreting the terms of a settlement agreement, the Court must view the agreement as a whole. That is, "each provision must be viewed in light of the other provisions." *See Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 47 (2011)). If the language of the agreement is unambiguous, then it will be given its plain and ordinary meaning and enforced as written without reference to extrinsic evidence. *Id*. But if the agreement is "susceptible to more than one meaning"—that is, ambiguous—then a court may move on to consider extrinsic evidence to figure out the parties' intent. *Id.* (quoting *Thompson*, 498 N.E. at 47). When a contract is unambiguous, or when extrinsic evidence bearing on the interpretation of the contract is undisputed, the existence of a valid and enforceable contract is a question of law. *See Harmon*, 712 F.3d at 1050; *see also Continental Cas. Co. v. Northwestern Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). But when the contract is ambiguous and extrinsic evidence is disputed, the contract's meaning becomes a question for a trier of fact. *Id*. Summary judgment is appropriate when no reasonable fact-finder could find for the non-moving party even when all reasonable inferences are drawn from the undisputed extrinsic evidence in the non-movant's favor. *Id*.

Applying those principles to this case, the Court holds that the release's scope is ambiguous and that, when the extrinsic evidence is viewed in Hindia's favor, a

reasonable fact-finder could conclude that the federal claims were not released. To start, the agreement does not explicitly waive any claims under the ADA or Rehabilitation Act. *See generally* Settlement Agreement. Indeed, there is no specific reference to any federal laws. *Id*. Absent an explicit waiver, the language of the agreement ends up being open to two readings. On the one hand, the release of "any and all" claims could be interpreted broadly to include federal employment-discrimination claims. *See e.g. Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 568 (7th Cir. 1995) (finding that "any and all" language in release claim arising from "previous employment relationship" was clear, and clearly encompassed employee's age discrimination claims). After all, the modifier "any and all" is as broad as a description of the claims as there can be.

On the other hand, the surrounding text in the agreement supports a narrower interpretation, specifically that only the *union* grievances between the parties are covered by the settlement. First, the overall agreement starts by listing not only Hindia and the Sheriff's Office as the parties to the settlement, but also the *Union*—which would *not* be a party of any discrimination claim brought by Hindia in court against the Sheriff. Settlement Agreement at 1. In the same vein, the release provision itself starts by saying that "this transfer shall be in full settlement of any existing claims/disputes that Hindia *and/or Teamsters* possesses … ." *Id*. (emphasis added). The bane of lucid legal writing—"and/or"—rears its ugly head here. Sometimes "and/or" means "both," and sometimes it means "either." If it means "both"

9

in this release, then only jointly held claims are released, which would not include the ADA and Rehabilitation Act claims.

There are still more sources of ambiguity. The second half of the sentence describing the release suggests that the released claims are specific to issues arising from the Union's collective bargaining agreement: "this transfer shall be in full settlement of any existing claims/disputes that Hindia and/or Teamsters possesses *with respect to* Isam Hindia's *fitness-for-duty* and/or Isam Hindia's *probationary status as a sworn correctional officer* at the [Cook County Jail] and any *such* pending claims are hereby extinguished." Settlement Agreement at 1 (emphases added). Arguably, then, the released claims are limited ("with respect to") only the then-existing ("pending") claims arising out of Hindia's "fitness-for-duty" and "probationary status," which sound like terms of art arising out of the collective bargaining agreement. The next sentence is no better in clarifying the scope of the release:

> By signing this Agreement, Hindia … agrees that this settlement resolves any and all *such* disputes and claims which have been or could have been asserted by him, or on his behalf, prior to the execution date of this settlement, including any and all disputes and claims pertaining to Hindia's Fitness-For-Duty Assessment and IME as a sworn correctional officer in and around 2016 and Hindia further hereby waives any claim he may/may not have had to backpay as a result of his absence from work due to said Fitness-For-Duty.

Settlement Agreement at 1 (emphasis added). This next sentence uses the limiting word "such" to describe the released "disputes and claims," so there must be some limitation to which the word "such" is referring. That limitation arguably must be drawn from the prior sentence, which (to repeat) defined the released claims as those

that are "with respect to Isam Hindia's fitness-for-duty and/or Isam Hindia's probationary status as a sworn correctional officer." Read together, all of these terms suggest that the release covers only the Union grievances that relate to the collective bargaining agreement.

So the text of the agreement is ambiguous. That means extrinsic evidence is permitted to illuminate the release's meaning. According to Hindia, he was told during the meeting that he would not be waiving his rights to file a lawsuit under the ADA, nor any other type of federal employment law. Hindia Decl. ¶ 9. Based on Hindia's version of the meeting, there is a fact dispute that cannot be resolved on summary judgment.

### B. Knowing and Voluntary

#### 1. Knowledge

Although Hindia did not formally cross-move for summary judgment against the release (probably because the Sheriff's motion did not properly frame itself as a summary judgment motion), he does argue that even if the release provision's text covers federal employment claims, still his claims would not be released because he did not enter into the agreement knowingly and voluntarily. Remember that releases of federal employment-discrimination claims must satisfy not only the requirements for contract formation under state law, but must also be entered into knowingly and voluntarily.

For a release to be valid, the party must sign it knowingly and voluntarily. Whether a settlement releasing a federal claim is knowing and voluntary

11

is a question of federal law determined under the totality of the circumstances. *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007); *see also Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n.15 (1974). In examining the totality of the circumstances, the Court looks to a number of facts, including (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part. *Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011) (quoting *Pierce,* 65 F.3d at 571). "However, where plaintiff is represented by chosen counsel throughout negotiations and settlement[,] the settlement agreement is presumptively informed and willing, absent circumstances such as fraud or duress." *Baptist*, 481 F.3d at 490 (quoting *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989)) (cleaned up)[3]; *see also Pierce*, 65 F.3d at 571 n.1.

The Sheriff contends that the presumption of knowledge and voluntariness should apply here because Hindia was represented by Nicole Chaney, the Union

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

attorney. Indeed, according to the Sheriff, Chaney negotiated and drafted the settlement agreement. Kramer Decl. ¶¶ 7-9. But according to Hindia, he had no input in drafting or negotiating the agreement, nor was he even aware that any negotiations took place. Hindia Decl. ¶ 7. What's more, the settlement agreement designated Chaney as "[a]ttorney for Teamsters Local 700," not for Hindia. Settlement Agreement at 2. That does not sound like Hindia's "chosen counsel." *Baptist*, 481 F.3d at 490. There is no evidence, at least right now, to suggest that Hindia could have hand-picked which Union attorney would represent him during the negotiations. So the presumption does not apply, at least not on the current record.

With the presumption dropped out, it is evident that there is a genuine dispute of fact on whether Hindia *knew* that he was releasing federal law claims (even assuming that the release purported to do that). It is true that Hindia has a high school diploma and read the settlement agreement before signing it. Hindia Decl. ¶ 12. Some courts consider that level of education sufficient to tip this factor in the employer's favor—but those cases involved release language that was *unambiguous*. *See e.g.*, *Sklaney v. Wilbert Funeral Servs., Inc.*, 2011 WL 2461860, at *6 (N.D. Ill. June 17, 2011); *Kinney v. Hamilton Partners*, 2004 WL 765882, at *7 (N.D. Ill. Apr. 7, 2004), *aff'd*, 112 F. App'x 508 (7th Cir. 2004); *Nobles v. Discover Fin. Servs., Inc.*, 2003 WL 22326584, at *3 (N.D. Ill. Oct. 9, 2003). As discussed earlier, the release's language here is ambiguous.

Also, Hindia was asked to sign the agreement the very same day he was presented with it for the first time, and he was not given a chance to negotiate or give any input into the agreement's terms. Hindia Decl. ¶¶ 6-7, 10. To counter this, the Sheriff argues that Hindia actively took part in the transfer process: he worked with HR and took the Skills Assessment test. R. 28, Def.'s Reply Br. at 4. From these facts, the Sheriff argues that Hindia was fully knowledgeable about the terms of the agreement. *Id*. That inference is a stretch to say the least. It is not reasonable to assume that because Hindia took the Skills Assessment test that he somehow also knew he would be waiving any future federal employment-discrimination claims in a settlement agreement that he had not even read yet.

Having said that, there are other facts suggesting that, if the release did cover federal employment claims, then Hindia knew and understood the scope of the release. The settlement agreement is only two pages long, and the release itself is only one paragraph. Hindia also signed a statement (on page 2 of the agreement) in which he represented that "I … have carefully read and fully understand each and every provision of this Agreement." Settlement Agreement at 2. Plus, the Sheriff's attorney during the negotiations process avers that Hindia agreed to the transfer before being presented with the written agreement, and that the parties clearly were working toward a settlement agreement over the course of four months. Kramer Decl. ¶¶ 6, 10. On the current record, then, neither side is the outright summary-judgment winner on whether, if the release does cover the federal law claims, Hindia knew that it did.

## 2. Voluntariness

Lastly, it is worth addressing whether Hindia has presented enough evidence to raise a genuine issue on whether he *voluntarily* signed the agreement. As discussed next, the answer is that the evidence indisputably shows that Hindia voluntarily signed the agreement. So addressing this issue now will eliminate the need for discovery or further litigation over whether Hindia's execution of the agreement was the product of duress. It was not.

According to Hindia, he signed the agreement under "economic and other stress" from his financial situation and his recent divorce. Pl.'s Reply Br. at 8. Hindia also declares that the Sheriff's representative told him that he would be fired if he did not agree to sign the agreement. *Id*. Based on these circumstances, Hindia contends that he "did not believe that he had any choice but to sign the agreement that same day." Hindia Decl. ¶ 11.

No doubt that going without pay for almost one year and going through a divorce would impose intense stress on Hindia. But Illinois law is clear that duress "does not exist merely where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances." *Castellano v. Wal-Mart Stores, Inc.*, 373 F.3d at 817, 820 (7th Cir. 2004) (applying Illinois law). Instead, duress is defined as when "one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." *Rissman v. Rissman*, 213 F.3d 381, 386 (7th Cir. 2000); *see also Allen v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 675 N.E.2d 187, 191 (Ill. App. Ct. 1996). Hindia does

not point to any evidence indicating that the Sheriff acted with any wrongful or unlawful pressure here. The closest he comes to this is arguing that the Sheriff's labor counsel "threatened" that Hindia would be fired unless he agreed to sign the settlement agreement. Pl.'s Resp. Br. at 8. But that type of threat—comprised of a tough but not illegal bargaining position—does not qualify as duress. *See Krilich v. Am. Nat. Bank & Trust Co. of Chicago*, 778 N.E.2d 1153, 1162 (Ill. App Ct. 2002); *N. Route 38, LLC v. City of Rochelle*, N.E.3d 855 (Ill. 2018).

To support his contention, Hindia relies heavily on *Alaska Packers' Association*, a Ninth Circuit case in which a fishing crew extracted a promise of double wages from an employer. *Alaska Packers' Ass'n v. Domenico*, 117 F. 99, 101 (9th Cir. 1902). After the fishing boat had already reached a remote location in the ocean, the crew refused to work until they were "promised" double wages. *Id*. The boat owner successfully argued that he acted under duress, because the remote location and lack of an alternate crew had enabled the sailors to behave opportunistically and because no one would have thought that the owner's ability to file a lawsuit could have helped; the fishing season would be over before the case could be adjudicated, and the seamen might have been judgment-proof anyway. *Id*. at 101-02.

But this case is very different. Nothing the *Sheriff* did put Hindia into a situation where he had no choice but to sign the agreement. He could have filed the lawsuit and pursued the ADA and Rehabilitation Act claims. Hindia's only support for why this legal remedy would have been inadequate at the time he signed the agreement is that "dealing with such economic and other stress until he might prevail

16

in court several years later was not a realistic choice." Pl.'s Resp. Br. at 8. The "inconvenience of litigation" does not, however, render inadequate a lawsuit seeking a judicial remedy. *See Israel v. Israel*, 2014 WL 6685517, at *9 (N.D. Ill. Nov. 25, 2014) (citing *Krilich*, 334 778 N.E.2d at 1162). As a matter of law, then, Hindia voluntarily entered into the settlement agreement.

### IV. Conclusion

The Sheriff's motion to dismiss, which is really a summary judgment motion, is denied. The remaining issues on the release are (1) whether the agreement's text covers the claims in this lawsuit; and (2) if the agreement covers the claims, then did Hindia know that it did. The status hearing of December 5, 2019 is accelerated to October 18, 2019, at 10:15 a.m. On October 15, 2019, the parties shall file a joint status report that (1) discusses a proposed discovery schedule, including whether discovery should be limited to the affirmative defense of release, or instead should also include discovery on the merits; and (2) whether there is a jury-trial right on the affirmative defense of release.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019